IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| MELISSA MILLER, | * | |
| Plaintiff, | * | |
| v. | * | CV 113-006 |
| SHANER HOTEL GROUP LIMITED PARTNERSHIP, SHANER HOTEL GROUP PROPERTIES TWO LIMITED PARTNERSHIP, and JOHN DOE, | * | |
| Defendants. | * | |

**ORDER**

Presently pending before the Court are Defendants' motion for summary judgment (doc. no. 13) and motion to strike (doc. no. 24). For the following reasons, both motions are **GRANTED**.

**I. BACKGROUND**

**A. Factual Background**

This case arises out of Plaintiff's slip and fall at the Holiday Inn located at 2155 Gordon Highway in Augusta, Georgia (the "hotel").[1] On March 26, 2011, Plaintiff was sharing a room at the hotel with her sister, brother-in-law, and nephew. (Miller Dep. at 67-69.) It had been "raining all day," at least

---

[1] According to Defendants' statement of material facts, the hotel is operated by Defendant Shaner Hotel Group Limited Partnership. (Doc. no. 13, Ex. 1 at 1-2.) Defendant Shaner Hotel Group Properties Two Limited Partnership does not own or manage the hotel. (Id.) This portion of Defendants' statement of material facts is uncontroverted (see doc. no. 23, ex. 2), and is therefore deemed admitted. See S.D. Ga. L.R. 56.1. Thus, Defendant Shaner Hotel Group Properties Two Limited Partnership is not connected to the facts of this case and is hereby **DISMISSED WITH PREJUDICE**. The record does not reveal the identity of Defendant John Doe.

intermittently. (Id. at 80, 92, 97.) In the late afternoon, Plaintiff's party returned to the hotel from her nephew's baseball tournament.[2] (Id. at 71.) They proceeded to walk from their room across an outdoor patio to a restaurant located adjacent to the hotel lobby.[3] (Id. at 79.) Plaintiff was wearing open-toed sandals. (Id. at 96.) As they walked from their room to the restaurant, it was raining and the ground was obviously wet. (Id. at 80.) Because of the rain, they ordered their food inside. (Id. at 79.) However, by the time the food was served (around 7:00 p.m.), it was not raining as hard, and they decided to eat outside at tables on a covered terrace adjacent to the restaurant. (Id. at 79, 88, 90, 92.)

The terrace's floor, which was composed of tile, was exposed to the elements, and Plaintiff was aware that rain had been blowing onto the terrace that day.[4] (Id. at 80-81.) Plaintiff was aware, as a matter of common sense, that tiles get slippery when wet. (Id. at 93.) Plaintiff was aware that the tiles on the terrace were actually wet and slick from the rain. (Id. at 80, 91.) Indeed, prior to her fall, Plaintiff saw other people slipping, sliding, and having trouble standing on the

---

[2] There is an immaterial dispute as to whether the tournament was played or cancelled due to the rain.

[3] For a diagram of the hotel premises, refer to Exhibits 1 and 1A of Plaintiff's deposition. (Miller Dep., Exs. 1, 1A.)

[4] Plaintiff's sister described the storm as raining "sideways." (C. Rahn Dep. at 20.) It was just "nasty weather." (B. Rahn Dep. at 12.) At some point later in the night, it thundered so hard that it shattered a mirror in Plaintiff's hotel room, and there may have been tornado warnings. (Id.; C. Rahn Dep. at 12; Miller Dep. at 97-98, & Ex. 12.)

2

terrace.[5] (Id. at 81, 91, 121.) Consequently, Plaintiff "walked slowly" to avoid falling. (Id. at 93, 110.) There were no "slippery when wet" warning signs on the terrace or on the doors leading to the terrace.[6] (Id. at 86-87, 93-94, 109.) However, even if Plaintiff had seen warning signs, she would not have taken any additional precautions or done anything differently; she "knew that the floor was wet" and was "walking slowly." (Id. at 109-10.)

From approximately 7:00 p.m. to 10:30 p.m., Plaintiff stayed on the terrace but took occasional trips to the restroom. (Id. at 92.) She also went inside to order soft drinks from the bar. (Id. at 95.) She did not order any alcoholic beverages and was not under the influence of alcohol that night.[7] (Id. at 92, 95, 102.) When Plaintiff went inside and outside, she probably used one of a series of French doors along the main wall between the restaurant and the terrace, though she could not identify the specific door. (See id. at 84-87, & Exs. 1-3, 9.) She did not recall ever using one of the doors located on either of the side walls of the restaurant building. (Id. at 86-87, 92-93, & Exs. 10, 11.) Around 10:00 p.m., Plaintiff's sister, brother-in-law, and nephew retired to their hotel room, but Plaintiff stayed out on the terrace and was talking with two

---

[5] Plaintiff's sister and brother-in-law also observed people slipping on the wet terrace tile. (B. Rahn Dep at 13; C. Rahn Dep. at 16.)

[6] Although this fact is disputed, the Court views the facts in the light most favorable to Plaintiff for the purpose of this motion.

[7] Although this fact is disputed, the Court views the facts in the light most favorable to Plaintiff for the purpose of this motion.

3

other individuals who were in town for the baseball tournament. (Id. at 94.) Those individuals also left before the fall occurred. (Id. at 103.) Around 10:30, when the slip and fall occurred, Plaintiff was walking alone. (Id. at 94, 103.)

Plaintiff described her fall as follows: "I got up, and I was heading to my room. I walked around the corner, and that's when I slipped and fell." (Id. at 96.) She also stated: "I just know I came out a door and I was going around a corner, and that's when I slid and fell." (Id. at 84.) The tile was wet where Plaintiff fell, and she "slipped through the moisture on the floor." (Id. at 96-97, 122-23.) Although Plaintiff never definitively identified the location of her fall, Plaintiff clearly remembered that she was leaving the terrace to go to her room and was walking around a corner when the fall occurred somewhere on the terrace tile. (Id. at 76, 81, 84-85, 99-100, 122-23.) Richard Dunnigan, the only known eyewitness, was seated on the terrace and "saw this girl come out of the left side of the building, took about two, maybe three steps, and her legs just flew out from underneath her." (Dunnigan Dep. at 31-32.) He saw her fall on the terrace tile. (Id. at 31-32, & Exs. 4-5.)

During their depositions, neither Plaintiff nor Mr. Dunnigan mentioned the presence of stairs or steps while describing the fall. Further, Plaintiff was shown a photograph of a short set of stairs (comprised of two steps) located on the side of the terrace near one of the aforementioned side doors.

4

(See Miller Dep. at 114, & Ex. 16; see also Dunnigan Dep., Ex. 8.) Defense counsel asked Plaintiff whether the photograph of the steps depicted where she fell. (Miller Dep. at 114.) Plaintiff answered in the negative: "No steps." (Id.)

After Plaintiff fell, she could not stand back up by herself. (Id. at 100.) Mr. Dunnigan assisted Plaintiff back to his room and helped ice her knee. (Id. at 101, 104.) Eventually, Mr. Dunnigan alerted Plaintiff's sister about the situation, and they both helped Plaintiff back to her hotel room. (Id. at 104.) Plaintiff continued to ice her knee, but it just kept swelling. (Id. at 103.) In the morning, they called an ambulance. (Id. at 105.) Plaintiff was diagnosed with a broken patella. (Id. at 118.) She was treated through surgery, medication, and physical therapy. (Id. at 118, 124-25.)

**B. Procedural History**

On December 11, 2012, Plaintiff brought suit in the Superior Court of Richmond County, Georgia against Defendants for the injuries she sustained from her slip and fall. (Doc. no. 1, Ex. 1.) On January 10, 2013, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (See Doc. no. 1.) Following discovery, Defendants filed a motion for summary judgment arguing that, under well-established Georgia law, a slippery condition on an outdoor surface caused solely by rainwater presents no unreasonable risk of harm. (Doc. no. 13, Ex. 2 at 11.) Defendants contend that in such "rainy day" cases, plaintiffs are deemed to have equal knowledge

5

of the risk and cannot recover as a matter of law. (Id.) Defendants relied heavily on Plaintiff's deposition testimony in their motion for summary judgment. (Id., Ex. 2 at 3-8.)

In response to Defendants' motion for summary judgment, Plaintiff filed an affidavit alleging new facts in conflict with her deposition testimony. (Doc. no. 23, Ex. 3.) In her affidavit, Plaintiff declared that, on the night of the incident, "as I was coming out the side door of the restaurant area of [the hotel], and walking to the steps, I stepped down the first two steps, individually. I proceeded to step down to the terrace level and slipped and fell down." (Miller Aff. ¶ 4.) She further stated: "As I descended the stairs . . ., I reasonably believed that the final tread at the terrace level would also have a non-skid, slip-resistant stair tread insert identical to the two adjacent treads. . . . The absence of a non-skid, slip-resistant stair tread insert at [the] terrace level caused my fall." (Id. ¶¶ 5, 8.) Plaintiff attached a photograph of the stairs where the fall allegedly occurred. (Id., Ex. 1.) The stairs depicted in the attached photograph are the same stairs depicted in Exhibit 16 of Plaintiff's deposition – where defense counsel asked Plaintiff if that was the location of the fall, and Plaintiff responded: "No steps." (Miller Dep. at 114, & Ex. 16.)

Subsequently, Defendants filed a motion to strike Plaintiff's affidavit, asserting that it was a transparent sham designed to create a material issue of fact where none

6

previously existed. (Doc. no. 24.) Defendants alternatively argued that, even if the fall occurred on the steps, there is no basis for liability. (Doc. no. 25.) Thereafter, Plaintiff filed a response to the motion to strike. (Doc. no. 26.) The Court will address the motion to strike prior to adjudicating the motion for summary judgment.

## II. MOTION TO STRIKE

### A. Sham Affidavit Standard

Generally, a district court must consider all of the evidence before it when deciding a motion for summary judgment. Lane v. Celotex Corp., 782 F.2d 1526, 1528 (11th Cir. 1986). However, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). "When this occurs, the court may disregard the affidavit as a sham." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987).

The Eleventh Circuit has stressed that this rule should be applied "sparingly." Santhuff v. Seitz, 385 Fed. Appx. 939, 944 (11th Cir. 2010). "[A] definite distinction must be made between discrepancies which create transparent shams and

7

discrepancies which create an issue of credibility or go to the weight of the evidence." Id. at 945 (quoting Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986)). In light of the jury's role in resolving questions of credibility, "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." Lane, 782 F.2d at 1530 (quotation omitted). "[A] party may by affidavit clarify testimony given in his deposition and thereby create a genuine issue as to a material fact." Van T. Junkins, 736 F.2d at 656; see also Tippens, 805 F.2d at 953-54 (mere variations of testimony and failures of memory throughout the course of discovery only give rise to credibility issues). Thus, to disregard an affidavit, there must be an "inherent inconsistency" between the affidavit and the prior deposition testimony. Santhuff, 385 Fed. Appx. at 944-45 (quoting Rollins, 833 F.2d at 1530). Moreover, the earlier deposition testimony must consist of clear answers to unambiguous questions. Lane, 782 F.2d at 1532.

### B. Application

Plaintiff, while describing her slip-and-fall incident during her deposition, never mentioned steps or stairs.[8] For example, when attempting to explain what Defendants should have done differently to prevent her fall, she explained: "Well, I just believe that it's their duty to go out and check each area,

---

[8] Plaintiff's only eyewitness, Mr. Dunnigan, also did not mention steps or stairs in describing the slip and fall.

and when I go in Wal-Mart and it's raining, they still have that [warning] sign right there at the door, any convenience store, and I just feel like those signs needed to be [there] - and they could have at least took a broom or took the excess water, or a mop, you know, [and given a] little push - and take some water up . . . ." (Miller Dep. at 121-22.)

In her affidavit, Plaintiff's view of the alleged hazard completely changed: "The final stair tread does not have [a] non-skid insert. The absence of a non-skid, slip-resistant stair tread insert at [the] terrace level caused my fall."[9] (Miller Aff. ¶¶ 7-8.) Plaintiff repeated several times in her deposition that the fall happened while she was coming around a corner, but she states in her affidavit that the fall occurred while descending stairs. (Compare Miller Dep. at 81, 84, 96, 99-100, 122-23, with Miller Aff. ¶¶ 4.) Additionally, during her deposition, Plaintiff did not recall using either of the side doors of the hotel's restaurant building (one of which led to the stairs at issue). (Miller Dep. at 86-87, 92-93, & Exs. 10, 11.) In her affidavit, however, Plaintiff clearly remembered that she "was coming out the side door" prior to descending the steps and falling.[10] (Miller Aff. ¶ 4.)

---

[9] The change in testimony aligned with Plaintiff's legal strategy in defending the motion for summary judgment. Plaintiff argued that the standing rainwater on the terrace tile was not the hazardous condition at issue; rather, Plaintiff contended the hazardous condition was the failure of Defendants to apply non-skid materials on the terrace tile at the bottom of the stairs. (See Doc. no. 23, Ex. 1.)

[10] Plaintiff's inability to recall using the side doors during her deposition may have been a mere failure of memory. This minor discrepancy would not justify disregarding the affidavit. See Tippens, 805 F.2d at 953-

9

Most importantly, during her deposition, Plaintiff clearly ruled out the stairs as the location of her fall. Defense counsel showed Plaintiff photographs and asked her a series of questions regarding the location of her fall. (See Miller Dep. at 114.) Referencing a specific photograph of the stairs at issue, defense counsel asked: "But Exhibit number 16 does not show where you fell; right? You didn't fall where what's depicted -- " (Id.) Plaintiff answered: "No steps." (Id.) In context, defense counsel's question was unambiguous, and Plaintiff's answer was clear: she did not fall at the stairs depicted in Exhibit 16. This response is inherently inconsistent with her affidavit, and Plaintiff has provided no plausible explanation for the contradiction in her testimony.

Plaintiff argues that her "no steps" response at the deposition was not clear. (Doc. no. 26 at 2.) As Plaintiff attempts to explain: "Ms. Miller did not indicate that there were no steps in the vicinity of the fall, nor that she hadn't recently descended any. Her statement could have simply indicated that she didn't fall onto the steps, or down them, or that she didn't trip over them." (Id.) In the Court's view, "[t]hat is not a plausible explanation." See Santhuff, 385 Fed. Appx. at 945 (rejecting witness's explanation that in his affidavits he understood the word "photograph" to mean pictures stored on his computer, but in his deposition he understood it to mean only printed images). In context, it is clear that, by

---

54. However, as explained infra, the remaining contradictions in Plaintiff's testimonies are more severely inconsistent.

stating "no steps," Plaintiff indicated that she did not fall at the stairs. There is no other plausible interpretation of the colloquy.

In conclusion, Plaintiff's affidavit is inherently inconsistent with her prior deposition testimony. It is plain that this revisionist affidavit is a sham designed to avoid summary judgment. Defendants' motion to strike is hereby **GRANTED**, and the Court will disregard Plaintiff's affidavit in resolving Defendants' motion for summary judgment.

### III. MOTION FOR SUMMARY JUDGMENT

**A. Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the

Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor

12

its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave Plaintiff appropriate notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. no. 20.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

13

## B. Premises Liability Standard

"In premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor." Sunlink Health Sys., Inc. v. Pettigrew, 286 Ga. App. 339, 341 (2007); see also Gibson v. Consol. Credit Corp., 110 Ga. App. 170, 173 (1964) ("The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons, even when he has invited them to enter.").

In order to recover for injuries sustained in a slip-and-fall action under Georgia law, "an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[11] Robinson v. Kroger Co., 268 Ga. 735, 748 (1997). "The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an *unreasonable risk* of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not." Sunlink Health, 286 Ga. App. at 341 (quotations omitted).

---

[11] These elements apply to cases involving slip and falls by guests on hotel property. See, e.g., Ballew v. Summerfield Hotel Corp., 255 Ga. App. 494, 495 (2002).

14

"Under Georgia law, a slippery condition caused solely by rainwater is not a hazard because it presents no unreasonable risk of harm." Id. "[I]t is common knowledge that water accumulates on the ground on rainy days, and the risk of harm imposed by this accumulation is not unreasonable but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate." Id. "Plaintiffs in rainy day slip and fall cases are charged with equal knowledge that water is apt to be found in any area frequented by people coming in from the rain outside." Id. at 341-42. Furthermore, it is not the duty of proprietors "to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas." Walker v. Sears Roebuck & Co., 278 Ga. App. 677, 680 (2006).

These principles have been reiterated throughout a "long line of Georgia cases dealing with 'rainy day' slip and falls." Chapman v. Wal-Mart Stores, Inc., No. 1:11-CV-03931, 2013 WL 607851, at *3 (N.D. Ga. Feb. 19, 2013); see, e.g., Sunlink Health, 286 Ga. App. at 340-42 (plaintiff who fell on wet concrete at entrance covered by roof but exposed to the elements charged with equal knowledge of rainwater risk); Walker, 278 Ga. App. at 677, 680-81 (affirming summary judgment against plaintiff who slipped on wet tiles in interior of building near entrance); Emory Univ. v. Smith, 260 Ga. App. 900, 901-02 (2003)

15

(wet ramp on rainy day did not constitute hazard[12]); <u>Layne v. Food Giant, Inc.</u>, 186 Ga. App. 71, 72 (1988) (affirming summary judgment against plaintiff who slipped on rainwater at store entrance); <u>Gibson</u>, 110 Ga. App. at 171-80 (affirming judgment against plaintiff who slipped on wet tile at store entrance).

### C. Application

There are no genuine disputes of material fact. According to Plaintiff's own testimony, she slipped and fell through moisture on the terrace tile. (Miller Dep. at 96-97, 99-100, 122-23.) It had been raining "on and off" throughout the day, and Plaintiff knew that rain had been blowing onto the terrace.

---

[12] In <u>Emory University</u>, the plaintiff claimed that a "combination" of the ramp's slick surfacing material, sloped sides, and location presented a hazard. 260 Ga. App. at 902. The court rejected this theory because Plaintiff failed to provide expert or any other evidence that the ramp was hazardous and that the proprietor had superior knowledge of the hazard. See id. at 902 & n.12 (distinguishing wet ramp cases where plaintiffs provided expert evidence or evidence of prior falls).

The <u>Emory University</u> plaintiff's "combination" theory seems analogous to Plaintiff's affidavit-reliant theory in this case, i.e. that a combination of the rainwater, coloration of the tiles on the stairs and terrace, and absence of non-skid surfacing on the tiles immediately following the stairs constituted a hazard. (See Doc. no. 23, Ex. 1.) Thus, even if the Court were to consider Plaintiff's affidavit and assume that the fall occurred on the stairs, Plaintiff's case still appears to be critically deficient due to Plaintiff's failure to present any: expert evidence on negligent design or construction of the stairs; evidence that the stairs violated an ordinance or building code; or evidence of prior falls known to Defendants. Compare <u>Cohen v. Target Corp.</u>, 256 Ga. App. 91, 92-93 (2002) (affirming summary judgment against plaintiff who fell on wet ramp on rainy day and failed to present expert evidence that ramp was negligently designed or constructed; failed to provide evidence of the violation of a building code, ordinance, rule, or standard; and failed to provide evidence that others had fallen on the ramp), and <u>Garrett v. Hanes</u>, 273 Ga. App. 894, 894-96 (2005) (affirming summary judgment against plaintiff who tripped on slight overhang of stairs which had been painted the same color as the stairs where defendant was unaware of any prior falls and plaintiff presented no expert testimony that stairs were negligently designed, constructed, or maintained), with <u>Spivey v. Bd. of Educ. of Savannah & Chatham Cnty.</u>, 194 Ga. App. 726, 726-27 (1990) (reversing summary judgment where plaintiff presented evidence that defendants were aware of prior fall on steps under similar weather conditions). The Court, however, need not definitively resolve the issue since Plaintiff's affidavit implicating the stairs has been stricken from the record.

(Id. at 80-81, 92, 97.) Plaintiff was aware that the terrace tiles were slick from the rain and had even seen other people slipping and sliding on the terrace prior to her fall. (Id. at 80-81, 91, 121.)

Under Georgia law, the rainwater on the terrace was not a hazard because it posed no unreasonable risk of harm. Sunlink Health, 286 Ga. App. at 341. Moreover, Plaintiff had at least equal knowledge of the risk. Id. at 341-42. In short, there is no evidence that Defendants exposed Plaintiff to any unreasonable risk or had superior knowledge of such a risk. In light of the foregoing, Defendants are entitled to judgment as a matter of law on Plaintiff's premises liability claim.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to strike (doc. no. 24) and motion for summary judgment (doc. no. 13) are hereby **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants. The Clerk shall terminate all deadlines and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of February, 2014.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA